```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                       CASE NO. 14-60085-CR-ZLOCH
 3
     UNITED STATES OF AMERICA,
 4                                       Fort Lauderdale, Florida
                   Plaintiff(s),
 5                                       February 12, 2015
            vs.
 6
     ERIC BEASLEY,
 7
                   Defendant(s).
 8   ----------------------------------------------------------

 9                        SENTENCING HEARING
                 BEFORE THE HONORABLE WILLIAM J. ZLOCH
10                   UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   FOR THE PLAINTIFF(S):   Catherine Koontz, Esquire
                             United States Attorney's Office
13                           500 East Broward Boulevard
                             Seventh Floor
14                           Fort Lauderdale, Florida 33394

15

16   FOR THE DEFENDANT(S):   Michael Gelety, Esquire
                             1209 Southeast Third Avenue
17                           Fort Lauderdale, Florida 3331

18

19

20   REPORTED BY:            Tammy Nestor, RMR, CRR
                             Official Court Reporter
21                           400 North Miami Avenue
                             Miami, Florida 33128
22                           tammy_nestor@flsd.uscourts.gov

23

24

25
```

 1   The following proceedings began at 10:01 a.m.:

 2          THE COURT:  Good morning.  Please be seated.

 3          Calling case No. 14-60085-Criminal.  Counsel, would

 4   you note your appearances.

 5          MS. KOONTZ:  Good morning, Your Honor.  Catherine

 6   Koontz on behalf of the United States.  Seated at counsel table

 7   is Alexis Carpentry with FBI.

 8          THE COURT:  Good morning.

 9          MR. GELETY:  Good morning, Judge.  Michael Gelety on

10   behalf of Eric Beasley.  Eric is here also.

11          THE COURT:  Good morning, counsel.

12          Let the record reflect that Eric Beasley is present

13   and in the courtroom.

14          Can I have the representative from the probation

15   office note her appearance?

16          THE PROBATION OFFICER:  Good morning, Your Honor.

17   Tracy Webb with probation.

18          THE COURT:  Good morning.

19          We are here for a sentencing.  First of all,

20   Mr. Gelety, are you privately retained?

21          MR. GELETY:  I am, Judge.

22          THE COURT:  Thank you.

23          Mr. Gelety, have you read the presentence

24   investigation report and the addendum to it?

25          MR. GELETY:  Judge, we have read it.  I have gone and

1    met with Mr. Beasley many, many times.  We have gone over it.

2    And I think the Court saw that we filed our notice that we have

3    no objections and there are no issues to be resolved.

4          THE COURT:  All right.  Mr. Beasley, have you read in

5    their entirety the presentence report and the addendum to it?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And have you discussed those papers fully

8    with Mr. Gelety?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you have any objections or any motions

11    to anything contained in the presentence report?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Are there any from the government?

14          MS. KOONTZ:  No, Your Honor.

15          THE COURT:  Mr. Beasley, if you will step up to the

16    podium.

17          Eric Beasley, you now being again before this Court

18    accompanied by your lawyer Mr. Michael Gelety and you

19    previously having pled guilty to the offense charged in the

20    one-count indictment of the United States of America versus

21    Eric Beasley, case No. 14-60085-CR-Zloch of the United States

22    District Court for the Southern District of Florida and the

23    Court having previously adjudged you guilty of the offense

24    charged in that one-count indictment, do you or does anyone on

25    your behalf now have any legal reason to show why the sentence

1    of the law should not be pronounced upon you, any legal reason?

2           MR. GELETY:  Judge, we have no legal reason, we have

3    no witnesses, because of the fact that both the government and

4    the defense --

5           THE COURT:  Just use had that microphone so that --

6           MR. GELETY:  Because of the fact that we have the odd

7    situation where we are both recommending the 20-year sentence

8    at this time, we didn't bring a lot of witnesses.  Mr. Beasley,

9    I think, would like to address the Court.

10          THE COURT:  No legal reason having been shown as to

11   why sentence should not now be imposed, the Court will receive

12   whatever information or evidence may be offered in extenuation

13   or in mitigation of punishment or which is otherwise relevant

14   to the sentence to be imposed.

15          Mr. Beasley, what would you like to say?

16          THE DEFENDANT:  Forgive me if I stumble a little bit

17   because this is kind of nerve racking.

18          When I was here in September for the evidentiary

19   hearing and I was called to answer questions over on the

20   witness stand, it was probably one of the worst experiences of

21   my life.  It was absolutely horrible.  And as we approach

22   trial, and we were hours away from going to trial on the case,

23   I sort of realized that the victim would need to be imposed

24   under the same -- she would probably have to go and do that and

25   I --

1          THE COURT:  She would have to go and do what?

2          THE DEFENDANT:  Testify on the witness stand.  And as

3    horrible as that was for me, I certainly didn't want to put her

4    through that.  I feel like that she has probably been through

5    enough as a result my actions.

6          And I wanted to tell the Court just how sorry I am for

7    everything that has occurred.  I mean, all I really need to say

8    to illustrate that is, I mean, just look at what happened.  I

9    had a new and budding career after years of college education.

10   I had a good life.  I had money.  I had an apartment, friends.

11   And because of my actions, I now have people waiting to take me

12   away to prison for 20 years where I will probably be well past

13   the death of my grandmother and possibly my father.

14         And, I mean, if I get out when I'm 45, I may never

15   have a family of my own.  It will be difficult for me to start

16   a new career.  I will probably never pursue my dream of being a

17   software engineer, which is what I had gone back to school for.

18   And I have hurt my friends, my family, and, of course, the

19   victim and her family.  And I have had a lot time to reflect on

20   it and it's just -- I'm just sorry that it happened.

21         THE COURT:  All right.  Thank you, Mr. Beasley.

22         Anything else from the defense, Mr. Gelety?

23         MR. GELETY:  Judge, no.  Again, because of our

24   agreement, I am not going to do anything to change that

25   agreement or change our position.  And the Court saw the PSR.

1   You heard the hearing.  And we would ask the Court to follow

2   the agreement, if you would so kindly do that.  And, you know,

3   it's just unusual for me to ask the Court to impose such a big

4   sentence, but it's a big sentence.  And, you know, he's facing

5   still the sentencing in the state case.  It was deferred until

6   this case was finalized.

7             THE COURT:  Use that microphone, please.

8             MR. GELETY:  Until the case was finalized, Judge.  And

9   we would ask the Court to adopt and agree to the recommendation

10  and do the 20.

11            THE COURT:  Well, I do not want to get into plea

12  negotiations because I am not allowed to do that, but how was

13  this figure arrived at?

14            MR. GELETY:  Judge, I will tell you.  He was

15  originally arrested in the state case.  The state case was nine

16  counts of sexual battery.  As you remember in the motion to

17  suppress, that was based on his excruciatingly detailed

18  videotaped statement, and he told the dates and what happened

19  and so forth and so on.  They filed nine counts, and they

20  arrested him on that.

21            Because of the age of that child, because of the

22  supervisory role as her teacher, those were life felonies, and

23  he was scoring -- I think the final total was 72 years as a

24  mandatory minimum.

25            THE COURT:  In the state court?

1          MR. GELETY:  In state court.  Somewhere later on after

2     he had bonded out, he was indicted in this court with the case

3     that is before the Court now, which was alluring and enticing,

4     ten-year mandatory, of course, up to life on that.

5          And I like to think I could talk the paint off the

6     walls if you give me enough time, but the chances of winning

7     two cases are pretty slim and --

8          THE COURT:  What is he facing in state court?

9          MR. GELETY:  He's facing -- the global agreement was

10    that they would recommend the same 20 that we are recommending

11    here, that it would then run concurrent and coterminous with

12    this sentence.

13         THE COURT:  I know that they are going to recommend 20

14    years in the state court case, but what is he facing in the

15    state court case?

16         MR. GELETY:  He's facing nine life sentences with a

17    mandatory minimum of 72.  However, at the plea, we announced

18    the plea in the state court, and of course it's much different

19    than it is here, and the judge accepted that and agreed to go

20    along with that recommendation should everything go, you know

21    frankly, should everything go as we are recommending in this

22    court.

23         THE COURT:  All right.

24         MR. GELETY:  So that's how we arrived at that.  And,

25    Judge, I can tell you, and you probably know, but I will tell

1  you anyway, I did everything possible.  We went and met with

2  the supervisors and we met here, we met here there, we met

3  there.  Of as a matter of fact, Ms. Koontz, don't tell anybody

4  I said that, but she really played it straight and she was

5  trying to work with us on this.

6         Right before we were supposed to go to trial, we had

7  an agreement for 15.  And they were going to recommend 15.  We

8  were going to recommend 15.  It was still a little bit over the

9  guideline range, which is 12 to 14, but the state refused to be

10 bound by that.

11        So I take the 15 there and then he gets 99 years in

12 state and he does the state time, it was just a terrible case.

13 From my point of view, it was a terrible case, from an artistic

14 point of view, and from his point of view, as he said, and he

15 realizes it, Judge.

16        He can't blame anybody.  There's always someone to

17 blame.  He can't do it.  So we are asking you, Judge, give him

18 the 20, and let's see what happens.

19        THE COURT:  I'm curious about one other thing.  Maybe

20 this came up at the evidentiary hearing on the motion to

21 suppress.  But there was some reference to the fact that a

22 friend, a classmate, I guess, of the victim, and that

23 classmate's parents or one of the parents went to the school

24 and thought that Mr. Beasley was fooling around and shouldn't

25 be, and I don't know who at the school spoke with Mr. Beasley

1    and said stop it.  Is that accurate?

2          MR. GELETY:  It's somewhat accurate, Judge.  There was

3    some teenage girl rumblings going on which then spilled over to

4    the parents.  The parents then talked to the people at Zion.

5    There was a meeting with Mr. Dupont at the school.

6          THE COURT:  Who is Mr. Dupont?

7          MR. GELETY:  He was the headmaster at the school.

8    Mr. Beasley came in.  They said, listen, we understand that

9    she's spending time in your room, which was true, that was the

10   genesis of this problem, and he said, you know, basically,

11   yeah, that's what's going on.  He said, don't do it.  So he was

12   aware of that.

13         And then when he was aware of the fact that she was

14   doing her homework there because the other classes weren't

15   happening, it was a little bit of an amorphous type of a

16   situation.

17         But the long and short of it, Judge, and I'm not going

18   to try to change it, is that he said, you know, be careful,

19   don't do anything unseemly or that even appears to be unseemly

20   with this student.

21         THE COURT:  The victim.

22         MR. GELETY:  Correct.

23         THE COURT:  So, Mr. Beasley, let me ask you.  Why

24   didn't that have any impact on you when you were called in by

25   the headmaster?

1            THE DEFENDANT:  Sir, at the time, there was absolutely

2    nothing untoward going on.  Those sorts of actions developed

3    later.  And, actually, in my time --

4            THE COURT:  So it had no impact on you whatsoever if

5    the activities developed later?

6            THE DEFENDANT:  That's not to say that it didn't, Your

7    Honor.  I just --

8            THE COURT:  Well, how much did it have on you if these

9    activities took place after this conversation?

10           THE DEFENDANT:  Well, the specific instructions from

11   my employer were to stop meeting with this person, you know,

12   during, you know, the designated sort of planning hours, and

13   that is exactly --

14           THE COURT:  So as long as you did it elsewhere and at

15   a different time, that was fine with you?

16           THE DEFENDANT:  I'm sorry, can you say that again?

17           THE COURT:  So as long as you did it elsewhere and at

18   a different time, that was fine with you?

19           THE DEFENDANT:  No, Your Honor.  I mean, the real

20   truth of the matter is that I just -- I made a mistake.  I was

21   advised against it and I did the wrong thing.  I am --

22           THE COURT:  You didn't make a mistake because you knew

23   what you were doing, correct?

24           THE DEFENDANT:  Yeah.

25           THE COURT:  I mean, you didn't make a mistake.

```
 1              THE DEFENDANT:  Well --

 2              THE COURT:  I mean, a mistake is if I'm rushing in the

 3    morning and I reach up on the cabinet and get a set keys

 4    thinking it's the set of keys to my car, and I get out there

 5    and I find that I have the wrong set keys, that's a mistake.  I

 6    did not intentionally take the wrong set of keys to walk out to

 7    my car.  You would agree with that, right?

 8              THE DEFENDANT:  Yeah, I understand.

 9              THE COURT:  All right.  So do you still say that you

10    made a mistake?

11              THE DEFENDANT:  No.  It was a poor choice of words.

12              THE COURT:  Anything else?

13              MR. GELETY:  Just so the Court knows, I would probably

14    have to take some -- you know, we have talked about this, and

15    he has constantly told us, you know, I did this, I ruined my

16    life.  And I guess I didn't warn him away from using mistake.

17              THE COURT:  I understand.

18              MR. GELETY:  It's an error.  He's not trying to

19    minimize it and say, jeez, I didn't know.

20              THE COURT:  I understand.

21              MR. GELETY:  I can tell you that it's ruined his life.

22    It's devastated him.

23              THE COURT:  The victim was 14 at the time, correct,

24    Mr. Beasley?

25              THE DEFENDANT:  Yes, Your Honor.
```

```
 1            THE COURT:  Was she a freshman or a sophomore --
 2            THE DEFENDANT:  I believe she was a freshman, Your
 3    Honor.
 4            THE COURT:  -- at the time?
 5            All right.  Anything else, Mr. Gelety?
 6            MR. GELETY:  No, Judge.  Just if there's any other
 7    questions, we have Dr. Brannon here and -- but, you know, we
 8    are asking the Court to, you know, stay with the deal and give
 9    him the 20.
10            THE COURT:  What say the United States?
11            MS. KOONTZ:  Your Honor, clearly, given the guidelines
12    in this case, we are asking for an upward departure.  However,
13    as Mr. Gelety pointed out, it was in an effort to resolve both
14    the federal case and the state case.  And we believe in this
15    case that a sentence of 20 years is appropriate for
16    Mr. Beasley.
17            THE COURT:  All right.  Thank you.
18            The Court being fully informed of the facts and
19    circumstances surrounding the crime and no legal reason having
20    been shown as to why sentence should not now be imposed, after
21    consideration of statements by all parties and a complete
22    review of the entire presentence report which contains the
23    advisory guideline computation and range which this Court has
24    considered, the Court has also considered all the statutory
25    factors as set forth in 18 U.S.C. section 3553(a), a sentence
```

1   will be imposed above the advisory guideline range; one,

2   pursuant to the agreement between the parties; two, to reflect

3   the seriousness of the offense; three, to provide just

4   punishment; four, to afford adequate deterrence to future

5   criminal conduct; five, to protect the public from further

6   crimes; and hopefully, number six, to promote respect for the

7   law, also to take into account the pending state charges

8   against Mr. Beasley.

9           Further, it is the finding of the Court that

10  Mr. Beasley is not able to pay both a fine as well as

11  restitution; therefore, no fine shall be imposed.  However,

12  restitution shall be ordered once that amount is determined.

13          Accordingly, pursuant to the Sentencing Reform Act of

14  1984, it is the judgment of the Court and the sentence of the

15  law that Mr. Eric Beasley is hereby committed to the custody of

16  the United States Bureau of Prisons to be imprisoned for a term

17  of 240 months as to the one-count indictment.

18          The sentence imposed herein shall run concurrent with

19  the sentence to be imposed in case No. 14-4620CF10A in and for

20  the 17th Judicial Circuit, Broward County, State of Florida.

21          Let me just double-check with the probation officer.

22  Is that the correct state course case number?

23          THE PROBATION OFFICER:  Let me just double-check that,

24  Your Honor.

25          THE COURT:  I will read it to you.  Let me know when

1    you are ready.

2            A PROSPECTIVE JUROR:  I'm ready.

3            THE COURT:  14-4620C10A.

4            THE PROBATION OFFICER:  That's correct.

5            MR. GELETY:  That's right, Judge.

6            THE COURT:  All right.  Thank you.

7            It is further ordered that pursuant to 18 U.S.C.,

8    Section 3664(D)(5), the victim's losses are not yet

9    ascertainable; therefore, the Court shall set a date for the

10   final determination of the victim's losses not to exceed 90

11   days after sentencing.

12           Upon release from imprisonment, Mr. Beasley shall be

13   placed on supervised release for a term of life.  Within 72

14   hours of release, he shall report in person to the probation

15   office in the district to which he is released.

16           While on supervised release, he shall not commit any

17   crimes, he shall be prohibited from possessing a firearm or

18   other dangerous devices, he shall not possess a controlled

19   substance, he shall cooperate in the collection of DNA, he

20   shall comply with the standard conditions of supervised release

21   that have been adopted by this Court including the following

22   special conditions:

23           One, there shall be a no contact with minors

24   requirement.

25           Two, there shall be a no contact with minors in

1    employment requirement.

2         Three, there shall be a no involvement in youth

3    organizations requirement.

4         Four, there shall be a sex offender treatment

5    requirement.

6         Five, there shall be a restricted from possession of

7    sexual materials requirement.

8         Six, there shall be the Adam Walsh Act search

9    condition.

10        And seven, there shall be the sex offender

11   registration requirement.

12        All as noted more specifically in part G of the

13   presentence report.

14        It is further ordered that Mr. Beasley shall pay

15   immediately to the United States a special assessment of $100.

16        All of Mr. Beasley's right, title, and interest to the

17   property identified in the preliminary order of forfeiture

18   which has been entered by this Court and is incorporated herein

19   by reference is hereby forfeited.

20        Does that cover everything, Madam Probation Officer?

21        THE PROBATION OFFICER:  Yes, it does, Your Honor.

22        THE COURT:  The Court adopts the factual findings and

23   advisory guideline computation, the total offense level, the

24   criminal history category, the imprisonment range, the

25   supervised release range, and the fine range as set forth in

1    the presentence report.

2           No fine has been imposed for the reasons previously

3    stated.  Restitution shall be ordered once the amount is

4    determined.

5           The sentence varies or departs upward from the

6    applicable guideline range based upon the agreement between the

7    parties, and that is the basis for the sentence that has been

8    imposed by the Court.

9           Does the defense have any objection to any of the

10   findings of facts or conclusions of law made by the Court here

11   this morning?  Mr. Gelety?

12          MR. GELETY:  Judge, we do not.  As a matter of fact,

13   we thank the Court for going along with the recommendation.  I

14   would ask --

15          THE COURT:  That's all right.  Just a moment.

16          MR. GELETY:  Okay.

17          THE COURT:  Mr. Beasley, do you have any?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Any from the government?

20          MS. KOONTZ:  No, Your Honor.

21          THE COURT:  Does the defense have any objection to the

22   manner or procedure in which sentence has been imposed or that

23   this hearing has been conducted?  Mr. Gelety?

24          MR. GELETY:  None, Judge.

25          THE COURT:  Mr. Beasley?

```
 1              THE DEFENDANT:  No, Your Honor.

 2              THE COURT:  Any from the government?

 3              MS. KOONTZ:  No, Your Honor.

 4              THE COURT:  Mr. Gelety, go ahead.

 5              MR. GELETY:  Judge, I was going to say I just -- so we

 6    can -- only because, you know, we have run into these

 7    logistical problems and clerical problems, the concurrent

 8    sentence, I hesitate about talking about this sentence being

 9    concurrent with the state because the state hasn't been imposed

10    yet.

11              THE COURT:  I said to be imposed.

12              MR. GELETY:  Yeah.

13              THE COURT:  Right.

14              MR. GELETY:  But, you know, it's absolutely essential

15    that that one be concurrent with this and there be no confusion

16    because the whole point of our exercise, and the prosecutor

17    will tell you, is that he spends his time and serves his time

18    in the federal system.

19              THE COURT:  Well, the state court judge has to say

20    that.

21              MR. GELETY:  Yeah.  That will be fine.

22              And if the Court could recommend or put a lack of

23    objection to him being transferred once he's designated up to

24    Ohio where his family is, that would be great.

25              And although the nature of the case was extremely
```

```
 1   serious because of the activities, I would ask the Court to

 2   recommend a minimal security or at least a medium security.

 3   There was no violence, no threats, no guns, no force.  And he's

 4   a young guy with no record and we would hate to see him go into

 5   something more severe than that because it would be probably,

 6   frankly, life threatening.

 7            THE COURT:  Do you have a specific place in Ohio or

 8   just the state of Ohio?

 9            MR. GELETY:  We don't have any specific places because

10   there's no designation as such.

11            Elkton, E-L-K-T-O-N, Ohio, that's a CI there.

12            THE DEFENDANT:  And I believe there is one called

13   Ashford, which is actually even closer.

14            MR. GELETY:  Or Ashford, Judge.  He's been doing his

15   homework.

16            THE COURT:  The Court recommends a federal facility in

17   or near Elkton, Ohio.

18            MR. GELETY:  Can you put and/or Ashton.  That's

19   another place he would --

20            THE COURT:  Any other place?

21            MR. GELETY:  No, Judge.

22            THE COURT:  So we've got Elkton, Ohio and Ashton,

23   Ohio, right?

24            MR. GELETY:  Right, Judge.

25            THE COURT:  The Court recommends a federal facility in
```

1   or near Elkton, Ohio or Ashton, Ohio.  Anything else from the

2   defense?

3          MR. GELETY:  No, sir.

4          THE COURT:  I have no control over the type of

5   facility that he goes into.

6          MR. GELETY:  We know.

7          THE COURT:  Anything else from the defense?

8          MR. GELETY:  Nothing else, Judge.  Thank you.

9          THE COURT:  From the government?

10          MS. KOONTZ:  No, Your Honor.

11          THE COURT:  All right.  Counsel, thank you very much

12   for your efforts.  The Court appreciates them.

13          Mr. Beasley, you are remanded to the custody of the

14   United States Marshal.  Mr. Beasley waived his right to appeal.

15          MR. GELETY:  Correct.

16          THE COURT:  Court is in recess.

17          (Thereupon, the hearing concluded at 10:31 a.m.)

18                              – – –

19

20

21

22

23

24

25

C E R T I F I C A T E


      I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.



10/21/2020          s/ Tammy Nestor
                  Tammy Nestor, RMR, CRR
                  Official Court Reporter
                  400 North Miami Avenue
                  Miami, Florida 33128
                  tammy_nestor@flsd.uscourts